UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTOPHER DEMSKI,<br>    Plaintiff,<br><br>v.<br><br>TOWN OF ENFIELD, CHIEF CARL SFERRAZZA, in his official and individual capacities, SERGEANT JAMES LEFEBVRE, in his official and individual capacities, OFFICER CHRISTOPHER DUFRESNE, in his official and individual capacities, OFFICER BRENDAN DEVINE, in his official and individual capacities, OFFICER NICHOLAS RAIGON, in his official and individual capacities, OFFICER KEVIN CWIRKA, in his official and individual capacities, OFFICER MICHAEL COLANTUONO, in his official and individual capacities, OFFICER JOHN DOE, in his official and individual capacities, OFFICER JANE DOE, in her official and individual capacities,<br>    Defendants. | CIVIL ACTION NO.:<br>3:14-cv-01568-VAB<br><br><br><br><br><br>JULY 22, 2015 |

**RULING ON DEFENDANTS' RENEWED MOTION TO DISMISS**

**I.   INTRODUCTION**

Plaintiff, Christopher Demski, filed this civil action against the town of Enfield, Connecticut (the "Town" or "Enfield") and nine members of its police department in their individual and official capacities. Defendants move under Federal Rule of Civil Procedure 12(b)(6) to dismiss for failure to state a claim all claims asserted against the individual defendants in their official capacities on the ground that those claims are duplicative of claims asserted against the Town. For the reasons that follow, the defendants' motion is GRANTED.

1

## II. FACTUAL ALLEGATIONS

On or about October 7, 2013, Mr. Demski took Ambien, a sedative used to treat insomnia. Am. Compl. ¶ 9, ECF No. 24. Sleepwalking is a side effect of Ambien. *Id.* ¶ 10. The night of October 10, 2013, Mr. Demski, while sleepwalking, exited his home in Enfield wearing his pajamas and walked toward the home of his mother and stepfather located around the corner. *Id.* ¶ 11. Occupants of a nearby home called the Enfield police to report Mr. Demski's unusual behavior and request an ambulance. *Id.* ¶ 12.

Meanwhile, Mr. Demski continued walking toward his destination, but mistakenly entered a nearly identical house next door. *Id.* ¶ 15. Charles Strider, the occupant of the house, called the police, but soon recognized the intruder as the son of his long-time neighbors. *Id.* ¶¶ 16-17. When police arrived, Mr. Strider told them that Mr. Demski was a long-time neighbor who needed medical attention, and that Mr. Demski was not threatening, aggressive, or dangerous. *Id.* ¶¶ 19-20.

Despite Mr. Strider's assurances, police officers on scene surrounded Mr. Demski as he exited Mr. Strider's home, screamed for him to get down, grabbed him, and shoved him forcefully to the ground. *Id.* ¶¶ 21-22. Officers allegedly tased Mr. Demski at least ten times. *Id.* ¶¶ 23-24. Officers allegedly pinned Mr. Demski to the front landing of Mr. Strider's home, kicked him, kneeled on him, and hit him with batons while he was defenseless, and injuriously handcuffed him. *Id.* ¶¶ 24-25. Defendant Dufresne allegedly instructed his police canine to bark in Mr. Demski's face and to bite Mr. Demski in the area of his right Achilles tendon while Mr. Demski was allegedly being tasered and beaten by other officers. *Id.* ¶¶ 26-29. None of the officers on scene

allegedly attempted to stop the attack, despite the pleas of onlooking neighbors and Mr. Demski himself.  *Id.* ¶¶ 30-31.

When an ambulance arrived thirty to forty-five minutes later, officers held Mr. Demski in a cruiser for twenty minutes before allowing medics to treat him.  *Id.* ¶ 35.  After being treated at the hospital, Mr. Demski was prematurely released into police custody and forced to limp and hobble with a torn Achilles tendon from the hospital to a cruiser without assistance, and then limp from the cruiser into a holding cell, where he was left unattended while bleeding and in pain.  *Id.* ¶¶ 36-37.  Police allegedly then forced Mr. Demski to limp without assistance to the booking area, where he was charged with resisting arrest, second degree criminal trespass, third degree criminal mischief, and breach of peace.  *Id.* ¶¶ 38-40.  Mr. Demski alleges that he suffered numerous physical, mental, and emotional injuries, and that his quality of life and earning capacity have diminished as a result of Defendants' conduct.  *Id.* ¶¶ 41-45.

## III.   STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must state a claim for relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007).  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

In determining whether the plaintiff has met this standard, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the non-moving party, *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007), and generally may consider only "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

## VI.   DISCUSSION

Defendants argue that all claims asserted against the individual defendants in their official capacities should be dismissed as duplicative of the claims asserted against the Town.  Mem. Law. Supp. Defs.' Mot. Dismiss at 8-9, ECF No. 26-1.  Mr. Demski counters that dismissal is not required, and that keeping those claims in the lawsuit will enable the individual defendants to participate in the litigation, will increase their accountability, and will preserve the possibility of injunctive relief against them.  Pl.'s Mem. Law. Opp. at 8-12, ECF No. 35.

Because the Town is named as a defendant, the Court will dismiss as duplicative all claims asserted against the individual defendants in their official capacities.

"[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978).  "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects

4

other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007) ("An official capacity suit against a public servant is treated as one against the governmental entity itself."). "[I]n a suit against a public entity, naming officials of the public entity in their official capacities add[s] nothing to the suit." *Davis v. Stratton*, 360 F. App'x 182, 183 (2d Cir. 2010) (internal quotation marks and citation omitted).

In light of these principles, district courts within the Second Circuit consistently dismiss as duplicative claims asserted against officials in their official capacities where the plaintiff has named the municipal entity as a defendant. *Phillips v. County of Orange*, 894 F. Supp. 2d 345, 384 n.35 (S.D.N.Y. 2012) (collecting cases); *see, e.g.*, *Kanderskaya v. City of New York*, 11 F. Supp. 3d 431, 435 (S.D.N.Y. 2014) (dismissing with prejudice claims against police officer in official capacity "because they are duplicative of [the plaintiff's] other claims against [the municipality].") *aff'd*, 590 F. App'x 112 (2d Cir. 2015); *Ferreira v. Town of E. Hampton*, 56 F. Supp. 3d 211, 237 (E.D.N.Y. 2014) ("Because the Town is named as a defendant in the instant case, the Court grants summary judgment as to all claims for the individual defendants in their official capacities."); *Canzoneri v. Inc. Vill. of Rockville Ctr.*, 986 F. Supp. 2d 194, 205 (E.D.N.Y. 2013) (dismissing official capacity claims against individual officers "because they are duplicative of the *Monell* claims against the [municipality]."); *Wallikas v. Harder*, 67 F. Supp. 2d 82, 83-84 (N.D.N.Y. 1999) (noting that "claims against municipal officials in their official capacities are really claims against the municipality and, thus, are redundant when the municipality is also named as a defendant" and dismissing federal and state law claims asserted against county sheriffs in their official capacities).

Connecticut courts have recognized these principles as well. *See Kelly v. City of New Haven*, 881 A.2d 978, 988-89 (Conn. 2005) ("It is well settled law that an action against a government official in his or her official capacity is not an action against the official, but, instead, is one against the official's office and, thus, is treated as an action against the entity itself. . . . Therefore, if the individual defendants are being sued in a particular count only in their official capacity, a judgment as to that count disposes of that count as to the city."); *Himmelstein v. Bernard*, 57 A.3d 384, 391 (Conn. App. Ct. 2012) ("Having been sued in his official capacity, [defendant police sergeant] is one with the town. Thus, the plaintiff's present action against [defendant police sergeant] is merely a redundant claim of nuisance against the town.").

Mr. Demski makes several arguments as to why the official capacity claims should not be dismissed in this case. The Court finds these arguments unpersuasive.

First, Mr. Demski argues that keeping the claims will enable the individual defendants to participate in their defense and will increase public accountability. Pl.'s Mem. Law. Opp. at 9-12. Mr. Demski relies on an Eastern District of Virginia case where the court denied a motion to dismiss claims asserted against city officials sued only in their official capacities, noting that Supreme Court precedent did not require dismissal of those claims and that keeping the named officials in the lawsuit would create little burden on the defendants, would enable the officials' full participation in the defense of the litigation, and would "provide a certain level of public accountability." *Chase v. City of Portsmouth*, 428 F. Supp. 2d 487, 489-90 (E.D. Va. 2006).

The considerations that motivated the court in *Chase* are absent here. The individual defendants are sued in their individual and official capacities, and therefore

6

will remain in this action, will participate in the defense of this action, and will be subject to whatever public accountability accrues from being named in a lawsuit.  The Court is less persuaded by *Chase* than by the overwhelming weight of authority within the Second Circuit dismissing official capacity claims under similar circumstances.

Second, Mr. Demski argues that dismissing the official capacity claims will "limit his potential for recovery" because the Court will not be able to enjoin the individual defendants in their official capacities.  Pl.'s Mem. Law. Opp. at 10-11.  But Mr. Demski does not affirmatively seek injunctive relief.  *See* Am. Compl. at 31.  To the extent that the Court at some point deems it just and proper to grant injunctive relief, the claims against the Town and against the individual defendants in their individual capacities will provide a basis for that relief.

Third, Mr. Demski argues that the official capacity claims are not all duplicative because some counts of the Amended Complaint are stated only against individual police officers and not the Town.  Pl.'s Mem. Law. Opp. at 11.  But those claims must be treated as claims against the Town.  *Giuliani*, 506 F.3d at 191 ("An official capacity suit against a public servant is treated as one against the governmental entity itself.").  Any counts of the Amended Complaint asserted only against individual police officers in their official capacity will not be excised wholly from this lawsuit, but rather construed as claims against the Town.  *See, e.g.*, *Frooks v. Town of Cortlandt*, 997 F. Supp. 438, 449 n.4 (S.D.N.Y. 1998) ("The Court will consider plaintiffs' section 1983 against the Town employees in their official capacities as a claim against the Town under section 1983.") *aff'd*, 182 F.3d 899 (2d Cir. 1999).

## V. CONCLUSION

For the foregoing reasons, Defendants' Renewed Motion to Dismiss (ECF No. 26) is hereby GRANTED. All claims asserted against the individual defendants in their official capacities are dismissed.

SO ORDERED at Bridgeport, Connecticut this twenty-second day of July, 2015.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE