**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

CHRISTOPHER DEMSKI,          :
      Plaintiff,           :
                       :
v.                     :           Case No. 3:14-cv-01568 (VAB)
                       :
TOWN OF ENFIELD, ET AL.,     :
      Defendants.        :

**RULING ON DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Christopher Demski, alleges multiple federal and state civil rights claims against Defendants, the Town of Enfield and various officers of the Enfield Police Department ("EPD"). Mr. Demski's claims arise out of actions taken by EPD officials in connection with Mr. Demski's arrest in October of 2013. The following parties are named as Defendants in this action: the Town of Enfield ("Town"); Chief Carl Sferrazza, Sergeant James Lefebrvre, Officer Christopher Dufresne, Officer Brendan Devine, Officer Nicholas Raigon, Officer Kevin Cwirka, Officer Michael Colantuono, and Officers Jane Doe and John Doe.

Mr. Demski has alleged the following federal claims under 42 U.S.C. § 1983: excessive force in violation of Fourth and Fourteenth Amendments (Count One); failure to intervene in violation of the Fourth and Fourteenth Amendments (Count Ten); failure to render adequate medical assistance in violation of the Fourth and Fourteenth Amendments (Count Twelve); false arrest and malicious prosecution (Count Fourteen); and municipal liability for constitutional violations on the part of the Town and Chief Sferrazza (Count Fifteen).

Mr. Demski has also alleged the following state claims: excessive force under the Connecticut constitution (Count Two); common law negligence (Count Three); liability under Conn. Gen. Stat. § 52-557n (Count Four); dog bite liability under Conn. Gen. Stat. § 22-357

1

(Count Five); common law recklessness (Count Six); intentional infliction of emotional distress
(Count Seven); negligent infliction of emotional distress (Count Eight); common law assault and
battery (Count Nine); failure to intervene in violation of the Connecticut Constitution (Count
Eleven); failure to render adequate medical assistance in violation of the Connecticut
Constitution (Count Thirteen); and indemnification under Conn. Gen. Stat. § 7-465 (Count
Sixteen).

Defendants have moved for summary judgment with respect to several of Mr. Demski's
claims.  Mot. for Summ. Judgment, ECF No. 61.  For the reasons set forth below, Defendants'
Partial Motion for Summary Judgment is **GRANTED**.

## I.   FACTUAL SUMMARY[1]

On the evening of October 10, 2013, Mr. Demski walked outside his home without
wearing a shirt.[2]  Am. Compl. ¶ 11, ECF No. 41.  At around midnight that night, Mr. Demski's
neighbors called 911 to report a shirtless man acting strangely.  L.R. 56(a)(1) ¶ 1.   Shortly after
that call, Mr. Demski broke into the home of another neighbor, Charles Strider.  *Id.* at ¶ 2.
According to Mr. Demski, Mr. Strider's house closely resembles the house of Mr. Demski's
mother and stepfather, which was next door, and Mr. Demski "mistakenly entered" Mr. Strider's
home thinking it was the home next door.  Am. Compl. ¶¶ 14-15.  Upon discovering that
someone had entered his home, Mr. Strider also called the police.  *Id.* at ¶ 2.  The EPD Incident
Report notes that Mr. Strider reported hearing "loud banging," seeing a "male with long hair and
no shirt pacing back and forth in his living room," and thinking "there was someone trying to kill
him."  Incident Report, Defs. Ex. C, ECF No. 61-5.

---

[1] Unless otherwise indicated, the following facts are undisputed.
[2] Mr. Demski explains that he was sleepwalking due to the side effects of Ambien, a prescription sleep medication.
Compl. ¶¶ 9-11.

Three EPD officers, Sergeant Lefebrve, Officer Dufresne and Officer Devine, arrived at Mr. Strider's home in response to the two calls.  Am. Compl. ¶ 3.  A police dog, Bruin, accompanied Officer Dufresne.  *Id.*, L.R. 56(a)(1) ¶ 3.

The parties offer divergent accounts of the events immediately following the police officers' arrival.  According to Defendants, when the police arrived, they saw Mr. Demski run out of the house, bleeding from his hands and feet.  *Id.* at ¶ 4.  When the police officers ordered him to get on the ground, he lowered himself to his knees, screaming incoherently, and when the police officers attempted to handcuff him, he resisted.  *Id.* at ¶¶ 6-7.  The police officers deployed their taser gun multiple times, and each deployment was allegedly ineffective.  *Id.* at ¶ 7. The police officers were ultimately required to use a "drive stun deployment," which allowed Officer Devine to handcuff Mr. Demski.  *Id.* at ¶ 8.

Mr. Demski, on the other hand, insists that he was handcuffed early on, before the police officers tased him repeatedly.  L.R. 56(a)(2) ¶ 11.  Mr. Demski also alleges that the police canine, following an "attack" command from Officer Dufresne, latched on to his right foot and ankle, resulting in injuries to his Achilles tendon.  Am. Compl. ¶ 27.  The parties dispute whether the police canine actually bit Mr. Demski.  L.R. 56(a)(1) ¶ 9.

After Mr. Demski was handcuffed, Officer Dufresne called for a medic, and the officers kept Mr. Demski in the police cruiser until the ambulance arrived.  *Id.* at ¶¶ 11-12.  According to Defendants, Mr. Demski was exhibiting aggressive behavior while in the police cruiser and while in the ambulance, including screaming, kicking the windows and spitting.  *Id.* at ¶¶ 12-14.  Mr. Demski does not have any independent recollection of his behavior during this time, and he does not remember the majority of the events described above.  *Id.* at ¶¶ 9-10, 15.  He only

remembers seeing a dog barking at him and being shocked with a taser gun.  *Id.*

While at the hospital, Mr. Demski initially continued acting aggressively.  *See* Johnson Memorial Hospital Records, Defs. Ex. J at 3, ECF No. 61-12 (noting that Mr. Demski was "fighting with us and being aggressive" and describing the need to place an oxygen mask on Mr. Demski "as a spit shield").  Mr. Demski gradually became more lucid at the hospital, and he was discharged later that same night.  Johnson Memorial Hospital Admission Record, Pl. Ex. 20, ECF No. 73-34.  After he was discharged from the hospital and returned to police custody, Mr. Demski alleges that Defendants forced him to walk with a leg injury and kept him in a holding cell.  Am. Compl. ¶¶ 36-37 (alleging that Mr. Demski was "made to limp and hobble, with a fully torn Achilles tendon… without assistance").

Following his arrest, Mr. Demski was charged with criminal trespass, criminal mischief, interfering with a police officer, and breach of peace.  L.R. 56(a)(1) ¶ 18.  By paying a $50 fine, Mr. Demski was able to reduce these charges to a single charge of creating a public disturbance. *Id.* at ¶ 19.

## I.    STANDARD OF REVIEW

The Court shall grant summary judgment if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has carried that initial burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).  If no reasonable jury could find in favor of the opposing party because "the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary

judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is material if it "might affect the outcome of the suit under the governing law . . . ." *Id.* Disputes concerning immaterial facts do not prevent summary judgment. *See id.*; *Howard v. Gleason Corp.*, 901 F.2d 1154, 1159 (2d Cir. 1990) ("[S]ummary judgment cannot be avoided by immaterial factual disputes."). When ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party and draw all inferences in its favor. *Dalberth v. Xerox Corp.*, 766 F.3d 172, 182 (2d Cir. 2014).

## II.    DISCUSSION

Defendants argue that Mr. Demski has failed to establish the existence of a genuine dispute of material fact with respect to the following claims: *Monell* municipal liability on the part of the Town and Chief Sferrazza (Count Fifteen); failure to provide adequate medical assistance under federal and state law (Counts Twelve and Thirteen); and false arrest and malicious prosecution (Count Fourteen).[3] Defendants have not challenged Mr. Demski's excessive force and failure to intervene claims under either the Fourth Amendment or the Connecticut Constitution, nor have they challenged Mr. Demski's remaining state law claims.

---

[3] Defendants' Motion for Summary Judgment also seeks dismissal of Mr. Demski's excessive force and failure to intervene claims as to the Fourteenth Amendment only (Count One, Count Ten); his dog bite liability claim under Conn. Gen. Stat. § 22-357 (Count Five); and all claims with respect to Defendants Cwirka, Colantuono, Raigon, and Doe. Mot. for Summary Judgment 1-2. Mr. Demski has conceded that these claims fail as a matter of law and has agreed to withdraw those claims. Pl. Mem. in Opp. Accordingly, Counts One, Five and Ten are dismissed.

### A.  *Monell* claim (Count Fifteen)

Mr. Demski seeks to hold the Town of Enfield and Chief Sferrazza ("Town Defendants") liable for their allegedly inadequate policies and training regarding the use of force by police officers.  Am. Compl. ¶¶ 77-82.  Specifically, Mr. Demski alleges that (1) the Town Defendants have a policy and practice of inadequate supervision and discipline of Enfield police officers who have backgrounds of misconduct in connection with arrests and seizures, and (2) the Town Defendants have maintained a policy and practice of inadequate supervision and training regarding the proper implementation of accepted police practices in various areas.  *Id.*  He claims that these policies proximately caused the alleged misconduct of the Defendant Enfield police officers in connection with his arrest.  *Id.* at ¶ 79.

In *Monell v. Department of Social Services of City of New York,* 436 U.S. 658 (1978), the United States Supreme Court determined that, in order for an individual plaintiff to bring a Section 1983 action against a municipality and its officials for monetary relief, the municipality must have officially adopted and promulgated policies that caused unconstitutional actions.  *Id.* "Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where … the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Id.* at 690.  "To hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Wray v. City of New York,* 490 F.3d 189, 195 (2d Cir. 2007) (internal marks and citations omitted).  Defendants argue the absence of a genuine dispute of

material fact with respect to the first element, the existence of an official policy or custom, which is fatal to Mr. Demski's *Monell* claim.  Def. Mem. in Supp. 14-15, ECF No 61-1.

"Courts have recognized four ways for plaintiffs to demonstrate a 'policy or custom': (1) 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers'[]; (2) conduct ordered by a municipal official with policymaking authority[]; (3) actions taken 'pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels'[]; or (4) a 'failure to train' municipal employees that 'amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact[.]'"  *Walker v. City of N.Y.*, No. 12 CIV. 5902 PAC, 2014 WL 1259618, at *2 (S.D.N.Y. Mar. 18, 2014) (quoting *Monell*, 436 U.S. at 690-691; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84 (1986); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); and *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).  Mr. Demski contends that the Town Defendants violated Mr. Demski's constitutional rights through two types of policies and/or customs: (1) a custom of inadequate supervision and discipline of police officers, and (2) a custom of failing to adequately train police officers in the use of force during arrests and seizures.  For the reasons set forth below, both of these arguments fail as a matter of law.

### 1.  Inadequate Supervision

Mr. Demski first alleges that the Town Defendants have adopted a "de facto" policy of inadequate supervision of their police officers, which resulted in the excessive use of force and related actions taken by the various EPD officers involved in his arrest.  Am. Compl. ¶¶ 77-82. In support of this contention, he specifically describes a series of incidents where EPD officers used force in the context of an arrest or seizure, those officers filed use-of-force reports, and the EPD approved the use of force as reasonable.  Pl. Mem. in Opp. 9-17, ECF No. 73; Use of Force

Reports, Pl. Ex. 6, ECF No. 73-8.  He alleges that, in all of the described incidents, the EPD

conducted only "superficial" investigations and failed to discipline the officers involved,

contributing to a policy of inadequate supervision that caused Defendants to use excessive force

against Mr. Demski in the context of his arrest.

"In order to establish the liability of a municipality in an action under § 1983 for

unconstitutional acts by a municipal employee below the policymaking level, a plaintiff must

establish that the violation of his constitutional rights resulted from a municipal custom or

policy." *Vann v. City of N.Y.*, 72 F.3d 1040, 1049 (2d Cir. 1995).  "This does not mean that the

plaintiff must show that the municipality had an explicitly stated rule or regulation… A § 1983

plaintiff injured by a police officer may establish the pertinent custom or policy by showing that

the municipality, alerted to the possible use of excessive force by its police officers, exhibited

deliberate indifference."  *Id.*  In order to meet this standard, Mr. Demski must show (1)

deliberate indifference on the part of the municipality sufficient to constitute a "custom or

policy" of inadequate supervision, and (2) a "direct causal link" between that policy and the

alleged constitutional deprivation.  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).

Mr. Demski fails to establish either of these requirements.

### a.  Deliberate Indifference

"To prove … deliberate indifference, the plaintiff must show that the need for more or

better supervision to protect against constitutional violations was obvious."  *Vann*, 72 F.3d at

1049 (citing *Canton*, 489 U.S. at 390).  "An obvious need may be demonstrated through proof of

repeated complaints of civil rights violations; deliberate indifference may be inferred if the

complaints are followed by no meaningful attempt on the part of the municipality to investigate

or to forestall further incidents."  *Id.* (citing *Ricciuti v. N.Y.C. Transit Authority,* 941 F.2d 119,

123 (2d Cir. 1991); *Fiacco v. City of Rensselaer,* 783 F.2d 319, 328 (2d Cir. 1986)).  In the excessive force context, inadequate supervision may give rise to deliberate indifference where a plaintiff presents "evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges that police officers had used excessive force in violation of the complainants' civil rights."  *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).

According to Mr. Demski, deliberate indifference can be inferred here because (1) the EPD was aware of repeated civil rights violations on the part of EPD officials through numerous multiple use-of-force reports filed by EPD officers, and (2) this alleged pattern of excessive force was not followed by any meaningful investigation on the part of Town officials.  Mr. Demski fails to establish a genuine dispute of material fact, however, as to the municipality's awareness and inaction regarding constitutional violations; thus, the Town and Chief Sferrazza were not deliberately indifferent as a matter of law.

i.    Notice of Constitutional Violations

According to Mr. Demski, the EPD was aware that officers used force on civilians on more than a dozen occasions before Mr. Demski's arrest.  He claims that these use-of-force incidents gave notice to the Town and to Chief Sferrazza that EPD officers inappropriately: kicked and pushed a woman during an arrest;[4] punched college students during an arrest;[5] attacked arrestees and fleeing suspects with police canine units on multiple occasions;[6] and deployed a taser gun on an individual while escorting him to an ambulance for psychiatric care.[7] *See* Pl. Mem. in Opp. 10-17.  In each of the reported use-of-force incidents, EPD officers

---

[4] *See* Crowley Dep. Tr. (*Crowley v. Enfield*), Pl. Ex. 5, ECF No. 73-6.
[5] *See Salas v. Town of Enfield* Compl., Pl. Ex. 8, ECF No. 73-10.
[6] *See McDaniel v. Enfield* Compl., Pl. Ex. 17, ECF No. 73-31.
[7] *See* Olschafskie Dep. Tr. (*Damato v. Enfield*), Pl. Ex. 12, ECF No. 73-16.

prepared detailed reports describing the circumstances surrounding the use of force, the EPD reviewed those reports internally, and the EPD approved the use of force.  *Id*.; Pl. Ex. 6 at 17-125.  Although none of these incidents has been found to constitute a constitutional violation in a court of law, Mr. Demski contends that, taken together, these incidents gave the Town and Chief Sferrazza "obvious red flags that abuses were occurring," putting the municipality on notice that the EPD had serious problems with excessive force.  Pl. Mem. in Opp. at 9.

Courts in this Circuit have found that unsubstantiated or unfounded civilian complaints have limited probative value in the context of an inadequate supervision *Monell* claim; nonetheless, even unfounded civilian complaints can, in some circumstances, be probative of deliberate indifference.  *See Fiacco v. City of Rensselaer, N.Y.,* 783 F.2d 319, 328 (2d Cir. 1986) ("The fact that none of the claims had yet been adjudicated in favor of the claimant was not material; if the City's efforts to evaluate the claims were so superficial as to suggest that its official attitude was one of indifference to the truth of the claim, such an attitude would bespeak an indifference to the rights asserted in those claims."); *see also Berkovich v. Hicks*, 922 F.2d 1018, 1023 (2d Cir. 1991) (affirming the exclusion of prior civilian complaints from evidence in *Monell* claim trial where officers accused in prior complaints were ultimately acquitted and misconduct alleged in prior complaints was too dissimilar to establish a "pattern of conduct" by defendant officer); *Lewis v. City of Albany Police Dep't*, 547 F. Supp. 2d 191, 201 (N.D.N.Y. 2008), *aff'd*, 332 F. App'x 641 (2d Cir. 2009) (allowing evidence of prior complaints where "the relevant prior complaints had substantial probative value in that only one exonerated [the defendant] and all were of sufficiently similar circumstances to merit admission to prove … the City's failure to discipline, train, and supervise him.").

Here, however, there is no evidence in the record suggesting that the reported incidents constitute a pattern of excessive force on the part of EPD officers.  The cited use-of-force reports were not formal civilian complaints.  Instead, police officers, themselves, not individuals accusing police officers of misconduct, filed each of the referenced use-of-force reports.  Pl. Ex. 6; Pl. Mem. in Opp. 10-17.  Although many of the referenced incidents ultimately did result in a formal lawsuit, those lawsuits were not initiated until after Mr. Demski's arrest, and none of those lawsuits resulted in a determination that excessive force was used.[8]  *Id.*  Furthermore, neither Chief Sferrazza nor the Town was directly involved in any of the reviews of the listed use-of-force reports, and none of the police officers identified in those incidents was named as a Defendant in this action.  Def. Reply Br. at 4, ECF No. 79; Pl. Ex. 6.

 Contrary to Mr. Demski's assertions that the reported incidents presented Chief Sferrazza and the Town with "obvious red flags," these reported incidents do not suggest a pattern of constitutional violations, nor do they suggest the requisite notice on the part of the municipality that the EPD had any problems with excessive force.[9]  Thus, Mr. Demski cannot establish that the Town and Chief Sferrazza were deliberately indifferent for purposes of *Monell* liability.  *See Ricciuti,* 941 F.2d 119, 123.

ii.     Failure to Investigate

Even if the prior use of force incidents had been sufficient to give the Town notice that constitutional violations were occurring, the record demonstrates that the supervisory efforts of the Town and its officials were not constitutionally inadequate as a matter of law.  A

---

[8] *See Crowley v. Enfield*, 3:14-cv-1903 (MPS) (complaint filed November 14, 2014); *Salas v. Enfield*, 3:14-cv-1883 (WWE) (complaint filed November 14, 2014); *McAlmond v. Enfield*, 3:15-cv-158 (JAM) (complaint filed January 8, 2015); *Olschafskie v. Enfield,* 3:15-cv-67 (MPS) (complaint filed December 1, 2014);

[9] Of note, the reported incidents may not even be admissible if this claim were to proceed to trial.  *See Berkovich*, 922 F.2d at 1023.

municipality's supervision may be constitutionally inadequate "where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007). Here, however, the municipality did more than "nothing" – in each instance, when presented with potential misconduct on the part of Enfield police officers, EPD officers prepared use-of-force reports, and EPD supervisors reviewed those reports to ensure that the officers' actions were appropriate under the circumstances. *See* Pl. Ex 6; Pl. Mem. in Supp. 10-17. Mr. Demski nonetheless alleges that these investigations were "perfunctory" and reflect governmental acquiescence to police misconduct, constituting a policy for purposes of liability under *Monell*. *Id.*

Where the municipal entity or officer, rather than ignoring an alleged pattern of misconduct, has made attempts to address the problem, a *Monell* plaintiff "face[s] a heavy burden of proof in showing that the state's response was so patently inadequate to the task as to amount to deliberate indifference." *Reynolds,* 506 F.3d at 192-193. The Second Circuit has clarified that, in order to give rise to *Monell* liability, the inadequacy of such investigations must reflect more than negligence: "Such inadequacy must reflect a deliberate choice among various alternatives, rather than negligence or bureaucratic inaction." *Id.* at 193 (citing *Pembaur v. Cincinnati,* 475 U.S. 469, 483-84 (1986)).

Construing the facts in the light most favorable to the plaintiff, the undisputed record evidence surrounding the series of EPD use-of-force reviews described here suggests that the alleged inadequacies of the EPD's supervision cannot rise to the level of "deliberate indifference" as required for a viable *Monell* claim. The record shows that the EPD demonstrated concern, not indifference, when made aware of potential excessive force on the

part of its police officers.  After receiving numerous use of force reports involving one officer in particular—Officer Worden, an individual who is not named as a Defendant in this action—the EPD prepared a report to Chief Sferrazza showing that numeral Internal Affairs investigations had been initiated examining this officer's conduct.  Worden Rep., Pl. Ex. 16, ECF No. 73-30.  While the EPD report ultimately determined that formal discipline was not appropriate at that time, the report recommended supplemental training and closer supervision, emphasizing the need for "frequent reminders of what this department expects from its officers."  *Id.*[10]

The facts in the record show that an "obvious need" had not been clearly presented to the Town Defendants at the time of Mr. Demski's arrest and that the EPD was not "deliberately indifferent" to that need.  *Vann*, 72 F.3d at 1049.  Thus, "Plaintiff's claims are insufficient to support an inference that the Town was 'on notice' of misconduct by its police officers, but failed to act, such that the Town exhibited deliberate indifference to the constitutional rights of its citizens."  *Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 539 (S.D.N.Y. 2012).  Mr. Demski's *Monell* claim based on inadequate supervision fails as a result.

### b.  Causation

Finally, the record evidence fails to provide a causal link between the alleged policy of inadequate supervision and the harm experienced by Mr. Demski, as none of the prior use-of-force incidents described by Mr. Demski resembles the circumstances of this case.[11]  Mr. Demski insists that the Town and Chief Sferrazza proximately caused his injuries by "promot[ing] and/or

---

[10] After the initiation of this lawsuit, Officer Worden was ultimately required to step down from the police force in connection with concerns about his pattern of misconduct.  Pl. Ex. 6 at 10-16.

[11] Most of the incidents described by Mr. Demski involved the use of force in response to relatively minor criminal activity; to the contrary, the EPD officers named as Defendants here were responding to a reported home invasion in which a frightened caller had stated that someone had broken down their door, which had been locked with a deadbolt, and was inside their house "trying to kill him."  Incident Report, Defs. Ex. C.  Furthermore, none of the described incidents involved an arrestee who was in an altered mental state, whereas Mr. Demski claims to have been sleepwalking and incapable of comprehending police orders.

encourag[ing] an environment conducive to the related violations of [his] Constitutional rights." Am. Compl. ¶ 80.  Nonetheless, in light of the significant gap between the unique circumstances of Mr. Demski's arrest and the described incidents in which the EPD has used force in the past, as well as the lack of involvement on the part of both Chief Sferrazza and the Town in those prior incidents, no reasonable jury would be able to conclude that the Town's approach to the review of use-of-force reports had any causal relationship to the use of force in connection with Mr. Demski's arrest.

"[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue... Thus, our first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *Canton,* 489 U.S. at 385; *see also Miller v. City of New London*, No. 3:13-CV-619 VAB, 2015 WL 2240269, at *12 (D. Conn. May 12, 2015) (denying *Monell* claim based on finding that "there are no facts in the record establishing a causal link between the alleged problems with use-of-force reporting and [plaintiff]'s alleged constitutional injuries").  Mr. Demski is unable to establish either a recognizable "municipal policy or custom" or a "direct causal link" to his injuries.  Accordingly, his *Monell* claim of inadequate supervision fails as a matter of law.

### 2.  Failure to Train

In the alternative, Mr. Demski argues that the Town Defendants have failed to provide adequate training to their officers.  According to Mr. Demski, this inadequate training also played a role in the allegedly unconstitutional conduct of the Defendant police officers.

As a preliminary matter, in order to move forward with a *Monell* claim based on failure to train "at the summary judgment stage, plaintiffs must 'identify a specific deficiency in the

city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation.'" *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007) (quoting *Green v. City of New York*, 465 F.3d 65, 81 (2d Cir. 2006)). To survive summary judgment, naming potentially relevant training deficiencies is not enough: "to satisfy the applicable legal standard for a failure to train claim, even if a plaintiff identifies specific training deficiencies, there also must be proof that these deficiencies are the result of deliberate indifference." *Miller*, 2015 WL 2240269, at *8 (citing *Wray*, 490 F.3d at 196); *see also Canton*, 489 U.S. at 379 ("The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train in a relevant respect amounts to deliberate indifference to the constitutional rights of persons with whom the police come into contact."); *Reynolds*, 506 F.3d at 192 ("a city's failure to train its subordinates satisfies the policy or custom requirement only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need.").

Mr. Demski, however, has not established that the alleged deficiencies in training had any causal relationship to the alleged constitutional deprivation, as he has not provided any factual basis for a reasonable jury to conclude that the training provided by the EPD was deficient in a way that caused his injuries.  Mr. Demski provides a list of categories in which the EPD's training was allegedly insufficient, including investigation techniques in connection with police calls; proper handling of police canines; and preparing adequate use of force reports.  Am. Compl. ¶ 78.  However, he does not specify how the training was deficient in any of the named areas.  *See Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440–41 (2d Cir. 2009) (stating that in order to prevail on a *Monell* claim on a failure-to-train theory, the "plaintiff

must offer evidence to support the conclusion that the training program was inadequate … and that a 'hypothetically well-trained officer' would have avoided the constitutional violation." (quoting *City of Canton,* 489 U.S. at 390-91)).

Defendants, on the other hand, have provided copies of formal policies governing various aspects of arrests and seizures, including the use of less than lethal force, Def. Ex. F, ECF No. 61-8; the use of tasers, Def. Ex. H, ECF No. 61-10; and the review of civilian grievances through Internal Affairs, Def. Ex. G, ECF No. 61-9.  Defendants have also provided documentation showing that the Enfield Police Department was accredited by the Commission on Accreditation for Law Enforcement Agencies ("CALEA") and the Police Officer Standards and Training Council ("P.O.S.T.").  Defendants state that, at the time of Mr. Demski's arrest, the EPD was one of only twelve police departments in the state to be accredited by both entities.  Def. Mem. in Supp. at 8.  Mr. Demski does not contradict these statements.  L.R. 56(a)(2) ¶¶ 26, 29-30.

The only policies that Defendants have not provided are policies governing the use of canines and policies governing the treatment of individuals in altered mental states.  Drawing all reasonable inferences in favor of the plaintiff, the absence of formal training in these two areas could arguably constitute "a specific deficiency in the city's training program… [that] is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004) (quoting *Canton*, 489 U.S. at 391).  Nevertheless, Mr. Demski has failed to establish deliberate indifference with respect to these two training deficiencies.

There are no facts in either the Amended Complaint or the record suggesting that the Town or Chief Sferrazza knew "to a moral certainty" that EPD officers would confront a sleepwalker who was capable of breaking into someone else's home.  *Id.*   Nor has Mr. Demski

alleged any facts suggesting a history of EPD officers mishandling situations involving individuals in altered mental states in general, sleepwalkers in particular, or the use of canines in connection with the arrests of such individuals.  Thus, there is no evidence that the absence of training in these areas would "frequently" cause constitutional deprivations, and neither the Town nor Chief Sferrazza can be found to have been deliberately indifferent based on their failure to provide training on the use of canines or interactions with sleepwalkers.

Based on the undisputed facts, no reasonable jury could conclude that Chief Sferrazza or the Town of Enfield failed to train their police officers in such a way that would constitute deliberate indifference to violations of people's constitutional rights.  Accordingly, Mr. Demski's *Monell* claim fails as a matter of law, and summary judgment is granted with respect to Count Fifteen of Mr. Demski's Amended Complaint.

### B.  Failure to Provide Adequate Medical Assistance (Counts Twelve and Thirteen)

Defendants also challenge the legal sufficiency of Mr. Demski's Fourteenth Amendment § 1983 claim that Defendants failed to provide adequate medical assistance.  Mr. Demski claims that he suffered severe injuries due to the force used against him during his arrest, and that the Defendant police officers denied him adequate medical care by: (1) forcibly transporting him to a police cruiser while injured; (2) keeping him in the police cruiser for twenty minutes before transferring him to an ambulance; and (3) transferring him to a holding cell after his discharge from the hospital.  Pl. Mem. in Supp. 6-7.  The Court concludes that this claim, too, fails as a matter of law.

A detainee who has not yet been convicted may bring a Section 1983 claim of deliberate indifference to medical needs under the Fourteenth Amendment, while a convicted prisoner may bring such a claim under the Eighth Amendment.  *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir.

2009) ("the district court correctly concluded that a claim for indifference to the medical needs of Caiozzo, as a pretrial detainee in state custody, was properly brought under the Due Process Clause of the Fourteenth Amendment… Claims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment").  In order to prevail on a deliberate indifference to medical needs claim, two elements must be satisfied: "[the plaintiff] must show that []he had a 'serious medical condition' and that it was met with 'deliberate indifference.'"  *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000).

### 1. Serious Medical Need

The parties dispute whether Mr. Demski suffered from a sufficiently serious medical condition, which is the first element of a deliberate indifference to medical needs claim.  "The 'serious medical need' requirement contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain."  *Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir. 1990).  The parties have presented competing factual accounts regarding the extent of Mr. Demski's injuries and whether they caused "extreme pain."

Mr. Demski has submitted the sworn testimony of three separate witnesses stating that Mr. Demski was bitten on the ankle by a police canine for an extended time.  Strider Dep. at 68, Pl. Ex. 2, ECF No. 73-3; E. Kenney Dep. at 63, Pl. Ex. 3, ECF No. 73-4; C. Kenney Dep. at 67, Pl. Ex. 18, ECF No. 73-32.  Mr. Demski further testified that, although he does not remember most of the circumstances of his arrest, he does remember his "inability to walk" after being released from the holding cell, "bleeding through everything" while in custody, and requesting medical attention.  Demski Dep. at 88, 92-94, Pl. Ex. 1, ECF No. 73-1.  He also stated that he

suffered from a fracture to his right toe as well as a swollen tongue and a cracked tooth, injuries that were not there before his arrest. *Id.*

Construing the facts in the light most favorable to the plaintiff, a reasonable jury could conclude that Mr. Demski suffered from sufficiently serious injuries for purposes of a Fourteenth Amendment deliberate indifference to medical needs claim. *See, e.g. Benjamin v. Galeno,* 415 F. Supp. 2d 254, 259 (S.D.N.Y. 2005), *aff'd sub nom. Benjamin v. Koeningsmann,* 204 F. App'x 979 (2d Cir. 2006) (finding fact issue regarding whether rotator cuff injury constituted a "serious medical need" for first prong of deliberate indifference claim where plaintiff alleged that injury resulted in "extreme pain"); *cf. Nance,* 912 F.2d at 607-608 (finding "sore feet and alleged need for orthopedic sneakers" not "sufficiently serious" for purposes of constitutional deliberate indifference claim).

## 2.   Deliberate Indifference

In order to survive summary judgment, however, Mr. Demski must also establish a genuine dispute of material fact with respect to the second element of a deliberate indifference to medical needs claim. This element requires a finding that Mr. Demski's medical needs were met with "deliberate indifference." *Cuoco*, 222 F.3d at 106.

"The 'deliberate indifference' component, as explained by the Supreme Court, includes both an objective and subjective element." *Frank v. Cty. of Ontario*, 884 F. Supp. 2d 11, 17–18 (W.D.N.Y. 2012) (citing *Wilson v. Seiter*, 501 U.S. 294, 298–299 (1991)). "With respect to the objective aspect, the court must ask whether there has been a sufficiently serious deprivation of the prisoner's constitutional rights… With respect to the subjective aspect, the court must consider whether the deprivation was brought about by defendants in wanton disregard of those rights." *Id.*

Mr. Demski seeks to establish deliberate indifference based on Defendants' delay and lack of care in responding to the injuries incurred during his arrest.[12]  However, the record does not reflect any material factual disputes regarding deliberate indifference on the part of Defendants.  Thus, summary judgment is appropriate with respect to Mr. Demski's deliberate indifference to medical needs claims.

Where a plaintiff's deliberate indifference claim is based on an unreasonable delay in treatment, "the seriousness inquiry focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone."  *Id.* at 19; *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).  Thus, it is "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant" for purposes of establishing deliberate indifference.  *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003).  Negligence alone cannot constitute deliberate indifference, *see Estelle v. Gamble*, 429 U.S. 97, 110 (1976); however, in some circumstances, "a lengthy, unjustifiable delay in providing necessary medical treatment might evidence deliberate indifference[.]" *Gomez v. Cty. of Westchester*, 649 F. App'x 93, 95 (2d Cir. 2016).

It is undisputed that police officers summoned an ambulance at 12:16 A.M. to respond to Mr. Demski's altered psychological state, less than twenty minutes after the police officers initially encountered Mr. Demski.  L.R. 56(a)(1) ¶ 11; Emergency Medical Services ("EMS") Report, Def. Ex. J, ECF No. 61-12; Police Report, Def. Ex. E, ECF No. 61-7.  It is also undisputed that Defendants brought Mr. Demski into the police cruiser after his arrest because he

---

[12] Mr. Demski also argues that Defendants were deliberately indifferent to his medical needs because they caused his medical needs through their excessive force; however, Defendants' involvement in causing Mr. Demski's injuries is most appropriately addressed in the context of his remaining excessive force claims, which were not included in Defendants' motion for summary judgment.  Thus, the Court declines to address those arguments here.

was acting aggressively, and that the ambulance took around twenty minutes to arrive to the scene.  L.R. 56(a)(1) ¶ 14; Investigative Report, Def. Ex. I, ECF No. 61-11.  In light of these undisputed facts, Defendants' alleged misconduct—namely, causing Mr. Demski to wait for the ambulance in a police cruiser and making Mr. Demski "limp around some more before placing him in a cell" after his release from the hospital—cannot rise to the level of deliberate indifference, and Mr. Demski's deliberate indifference claims fail as a result.  Indeed, there is no record evidence for the jury to infer that the waiting time for the ambulance was too much or that there was an alternative to having Mr. Demski "limp around" that the police officers failed to make available to him.

In the absence of such evidence, no jury would be able to reasonably conclude that Defendants were deliberately indifferent to Mr. Demski's medical needs in connection with their response to his physical and psychological state on the night of his arrest.  Accordingly, Mr. Demski's deliberate indifference claims fail as a matter of law, and summary judgment is granted as to Counts Twelve and Thirteen of Mr. Demski's Amended Complaint.

### C.  False Arrest and Malicious Prosecution (Count Fourteen)

Defendants seek dismissal of Mr. Demski's false arrest and malicious prosecution claims, arguing that these claims fail as a matter of law.  Mr. Demski does not respond to Defendants' motion for summary judgment with respect to these claims.

"Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *Conway v. Vill. of Mount Kisco*, 750 F.2d 205, 214 (2d Cir. 1984)).  Under Connecticut

law, in order to prevail on claims of either false arrest or malicious prosecution, a plaintiff must first establish that the underlying criminal action lacked probable cause. *See Russo v. City of Bridgeport,* 479 F.3d 196, 203 (2d Cir. 2007) ("in Connecticut, a false arrest claim cannot lie when the challenged arrest was supported by probable cause."); *Shattuck v. Town of Stratford*, 233 F. Supp. 2d 301, 306 (D. Conn. 2002) ("Under Connecticut state law, to establish malicious prosecution, the plaintiff must demonstrate that the 'initiation or procurement of the initiation of criminal prosecution with malice for a purpose other than bringing an offender to justice; that the defendant acted without probable cause, and the criminal proceedings terminated in favor of the plaintiff.'" (quoting *Clark v. Town of Greenwich*, No. CV00177986, 2002 WL 237854, at *3 (Conn. Super. Jan. 24, 2002))); *see also Jovanovic v. City of N.Y.*, 486 F. App'x 149, 152 (2d Cir. 2012) ("An element of any malicious prosecution claim is the absence of probable cause").

It is undisputed that, at the time of his arrest, Mr. Demski was discovered to have forcefully broken into his neighbor's house while shirtless and acting incoherently.  L.R. 56(a)(1) ¶¶ 1-2; L.R. 56(a)(2) ¶¶ 1-2.  Apart from the conclusory statement in Mr. Demski's Amended Complaint that the Defendant police officers arrested Mr. Demski "without probable cause to do so," *see* Am. Compl. ¶ 75, Mr. Demski has not articulated any factual basis for the Court to conclude that the officers lacked probable cause in making the underlying arrest and initiating the criminal charges against Mr. Demski.  Without this essential element, Mr. Demski's false arrest and malicious prosecution claims fail as a matter of law.

Furthermore, it is also undisputed that the charge ultimately brought against Mr. Demski, creating a public disturbance, was not voluntarily dismissed or otherwise resolved in his favor, as Mr. Demski disposed of this charge by paying a $50 fine.  L.R. 56(a)(1) ¶ 19.  "A person who thinks there is not even probable cause to believe he committed the crime with which he is

charged must pursue the criminal case to an acquittal or an unqualified dismissal, or else waive his section 1983 claim." *Roesch v. Otarola*, 980 F.2d 850, 853 (2d Cir. 1992) (holding that "a dismissal pursuant to the Connecticut accelerated pretrial rehabilitation program is not a termination in favor of the accused for purposes of a civil rights suit."). Here, the disposition of this charge through the payment of a $50 fine was neither an acquittal nor an unqualified dismissal. Accordingly, his malicious prosecution claim fails as a matter of law on this ground as well.

Mr. Demski has failed to demonstrate a genuine dispute of material fact with respect to his false arrest and malicious prosecution claims. Accordingly, summary judgment is granted with respect to Count Fourteen of Mr. Demski's Amended Complaint.

## III.   CONCLUSION

Defendants' Motion for Partial Summary Judgment is **GRANTED**. Count Five and Counts Twelve through Fifteen of Mr. Demski's Amended Complaint are dismissed. Mr. Demski's excessive force and failure to intervene claims (Counts One and Ten) are also dismissed with respect to alleged Fourteenth Amendment violations only. All claims with respect to Defendants Cwirka, Colantuono, Raigon, and Doe are dismissed, and only the following Defendants remain in this action: the Town of Enfield, Sergeant Lefebvre, Officer Dufresne, and Officer Devine.

The following claims will proceed to trial against Defendants Lefebvre, Dufresne and Devine: excessive force under the Fourth Amendment and the Connecticut Constitution (Counts One and Two); common law negligence and recklessness (Counts Three and Six); common law intentional and negligent infliction of emotional distress (Counts Seven and Eight); common law assault and battery (Count Nine); and failure to intervene under the Fourth Amendment and the

Connecticut Constitution (Counts Ten and Eleven).  The following claims will proceed to trial

against Defendant Town of Enfield: liability under Conn. Gen. Stat. § 52-557n (Count Four); and

indemnification under Conn. Gen. Stat. § 7-465 (Count Sixteen).  All other claims and

Defendants are dismissed.


SO ORDERED at Bridgeport, Connecticut this 6th day of February, 2017.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE